# IN THE UNITED STATES DISTRICT COURT
## DISTRICT OF SOUTH CAROLINA
## ORANGEBURG DIVISION

| | |
|---|---|
| Cynthia Stanley, ) | |
| ) | |
| Plaintiff, ) | |
| ) | Civil Action No. 5:20-3030-RMG |
| vs. ) | |
| ) | |
| Kilolo Kijakazi, Acting Commissioner ) | |
| of Social Security, ) | **ORDER** |
| ) | |
| Defendant. ) | |
| _____) | |

Plaintiff brought this action pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3) seeking judicial review of the final decision of the Commissioner of Social Security denying her claim for Supplemental Security Income ("SSI"). In accordance with 28 U.S.C. § 636(b) and Local Civil Rule 73.02 DSC, this matter was referred to a United States Magistrate Judge. The Magistrate Judge issued a Report and Recommendation ("R & R") on October 19, 2021, recommending that the Commissioner's decision be affirmed. (Dkt. No. 15). Plaintiff timely filed objections to the R & R and the Defendant filed a reply. (Dkt. Nos. 22, 27). For reasons set forth below, the Court reverses the decision of the Commissioner and remands the matter to the agency for further action consistent with this order.

## Legal Standard

The Magistrate Judge makes only a recommendation to this Court. The recommendation has no presumptive weight, and the responsibility to make a final determination remains with the Court. *Mathews v. Weber*, 423 U.S. 261 (1976). The Court is charged with making a *de novo* determination of those portions of the Report and Recommendation to which specific objection is

made. The Court may accept, reject, or modify, in whole or in part, the recommendation of the Magistrate Judge. 28 U.S.C. § 636(b)(1).

The role of the federal judiciary in the administrative scheme established by the Social Security Act is a limited one. The Act provides that the "findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. § 405(g). "Substantial evidence has been defined innumerable times as more than a scintilla, but less than preponderance." *Thomas v. Celebrezze*, 331 F.2d 541, 543 (4th Cir. 1964). This standard precludes *de novo* review of the factual circumstances substituting the Court's findings of fact for those of the Commissioner. *Vitek v. Finch*, 438 F.2d 1157, 1157 (4th Cir. 1971).

Although the federal court's review role is a limited one, "it does not follow, however, that the findings of the administrative agency are to be mechanically accepted. The statutorily granted right of review contemplates more than an uncritical rubber stamping of the administrative action." *Flack v. Cohen*, 413 F.2d 278, 279 (4th Cir. 1969). Further, the Commissioner's findings of fact are not binding if they were based upon the application of an improper legal standard. *Coffman v. Bowen*, 829 F.2d 514, 519 (4th Cir. 1987).

The evaluation of medical opinions in adjudicating applications for Social Security Disability has been a source of considerable controversy and litigation over the years. Recent regulatory changes have modified those standards, but the Commissioner continues to have the obligation to weigh all medical opinions under a number of specific regulatory factors. The most important factors are the consistency of the medical opinions "with the evidence from other medical sources" and the supportability of the opinions with objective medical evidence and supporting explanations. 20 C.F.R. §§ 416.920c(a), (c)(1), (2). Additional factors to be weighed

in assessing medical opinions are the provider's length of relationship with the claimant, frequency of examinations, purpose of treatment, extent of treatment, and examining relationship. *Id*. at § 416.920c(c)(3)(i)-(v). Additionally, the Commissioner is directed to weigh whether the physician is a specialist and whether the opinions were offered with the benefit of the full record. *Id*. at §§ 416.920c(4), (5).

A claimant is classified in various categories based upon her ability to perform certain levels of work. These categories include "very heavy work," "heavy work," "medium work," "light work," and "sedentary work." 20 C.F.R. § 404.1567. It is well settled that a residual functional capacity "for less than a full range of sedentary work reflects serious limitations" and is "expected to be relatively rare." 20 C.F.R., Pt. 404, Subpt. P, App. 2 § 200.00(g)(3); SSR 96-9P, 1996 WL 374185 at *1 (S.S.A. July 2, 1996).

## Discussion

It is important at the outset to set forth the narrow differences between the position of the Commissioner and the position of the Plaintiff in this appeal. The Commissioner found that Plaintiff retained the capacity to perform less than the full range of sedentary work, the lowest level of a capacity to perform full time work in which a claimant is not deemed disabled under the Social Security Act. (Dkt. No. 12-2 at 18). On the other hand, Plaintiff asserts that her severe mental and physical impairments render her disabled under the Social Security Act.

A claimant who is unable to perform her past relevant work and is limited to sedentary work is generally deemed disabled once she reaches 50 years of age. 20 C.F.R. Part 404, Sub Part P, App. 2, §§ 201(g), 201.09. Plaintiff's date of birth is May 19, 1970, making her disabled under Social Security Regulations as of May 19, 2020. Therefore, this appeal addresses only the

period between the application date of Plaintiff's disability claim of December 4, 2017 until the date she turned 50 years of age. In light of the Administrative Law Judge's (ALJ) findings that Plaintiff's impairments place her just inside the lowest level of performance that does not render her disabled, an error, such as in the weighing of expert testimony, could well be outcome determinative.

The Commissioner recognizes that Plaintiff suffers from multiple severe impairments: "right hip and femoral arthritis, chronic obstructive pulmonary disease (COPD), carpal tunnel syndrome (CTS), post traumatic stress disorder (PTSD) and bipolar disorder." (Dkt. No. 12-2 at 16). Plaintiff has been treated for over a decade by Dr. Wanda Starling for pain management and had her mental health treatment provided by Dr. Frank Forsthoefel and Dr. Ajay Sood. All of these treating physicians have identified significant physical and mental impairments which, if accurate, would render it unlikely that Plaintiff could sustain full time work. The ALJ rejected the material opinions of all of these treating physicians. Additionally, the ALJ rejected a critical portion of the opinions of a consultive examiner, Dr. Gordon Early. Instead, the ALJ found "generally persuasive" only the opinions of in-house chart reviewers who have not examined, treated or even laid eyes on the Plaintiff.

The Court finds that the ALJ's evaluation of the Plaintiff's treating and consulting physicians does not meet the standards of the agency's newly adopted regulations, as set forth below:

A. Dr. Frank Forsthoefel: Plaintiff was treated at her local mental health center by Dr. Forsthoefel for a number of years. His office notes detailed significant mental health challenges caused by Plaintiff's PTSD and chronic, and often severe, right hip and leg pain. On February

28, 2016, Dr. Forsthoefel noted that Plaintiff remained "very stressed out as residual PTSD symptoms. Continuing nightmares. Continued fear responses with panic and social anxiety interfering with functioning." (Dkt. No. 12-7 at 121). Dr. Forsthoefel further documented that Plaintiff was "co-dependent on friends to function." He did note her depression was somewhat improved with increased medication, but "despite her marginal improvement she remains very disabled in her functioning in her everyday activities. Does not function more than 15 minutes at a time." (*Id*. at 121). In another office note, dated December 7, 2016, Dr. Forsthoefel documented that Plaintiff was "motivated to work despite rods in hips which grind into her legs and which prevents any sustained sitting and standing. . . Continuing muscle spasms, whether sitting and standing, which contribute to her depression. (*Id.* at 223). In another office visit, on May 19, 2017, Dr. Forsthoefel documented Plaintiff was "not functioning in any sustained way" due to depression and social anxiety. He further observed that her "concentration and memory seriously impaired because of social and fear responses." (*Id*. at 9).

      The ALJ made only a passing, dismissive reference to Dr. Forsthoefel's opinions, stating that they appear "to be [based on] the claimant's self-reports" and any ultimate opinion on disability is reserved for the Commissioner. (Dkt. No. 12-2 at 23). There is no assessment of the consistency of Dr. Forsthoefel's opinions or their supportability in the record. A review of the records and opinions of Plaintiff's treating physicians shows that Dr. Forsthoefel's opinions are highly consistent with their opinions and with his own treatment records. Furthermore, although the Commissioner is not obligated to address explicitly regulatory factors other than consistency and supportability (which the ALJ failed to do), it is noteworthy that Dr. Forsthoefel's opinions were based on a long treatment and examining relationship, which surely provides additional

weight for his opinions. The failure to weigh Dr. Forsthoefel's opinions in accord with the newly adopted medical opinion regulation, standing alone, requires reversal and remand.

 B. <u>Dr. Ajay Sood</u>:  Plaintiff also was subsequently treated at her local mental health clinic by Dr. Sood, who continued to diagnose Plaintiff with PTSD and bipolar disorder and to treat her with a similar medication regime as Dr. Forsthoefel. Dr. Sood noted that at times Plaintiff had some better days, but "she can't do much secondary to the rod in her leg." (Dkt. No. 12-7 at 44). In his July 26, 2018 office note, Dr. Sood documented that Plaintiff "continues to have issues with poor energy and confusion" and was "no longer living on her own." (*Id*. at 76). He further noted "she spends the day around the house, going out to eat, doing some shopping." (*Id*.). Dr. Sood stated on September 17, 2019 that Plaintiff would have problems with attention and concentration that would require frequent interruptions if she attempted to return to full time work. (*Id*. at 220).

 The ALJ found Dr. Sood's opinions "unpersuasive" because they were "vague" and lacked substantive explanations. The ALJ also noted that at times Plaintiff had "some improvement" with medication and Dr. Sood's opinions were inconsistent with Plaintiff's ability to "go out to eat, go shopping in stores, drive and function independently." (Dkt. No. 12-2 at 23). The ALJ fails to address the obvious consistency of Dr. Sood's opinions with those of her other treating physicians and appears to assume that any episodic minor improvement in her chronic depression would render Plaintiff capable of performing full time work.

 The ALJ's suggestion that Plaintiff was freely engaging in shopping, driving, and self-care significantly overstates the record. While Plaintiff may have the "ability" to drive, she rarely does so and depends on others to transport her. (Dkt. No. 12-7 at 53). Plaintiff testified that she

is able to do limited shopping but commonly remains in the car when her driver/companion shops. (Dkt. No. 12-2 at 44). Additionally, the uncontested testimony establishes that Plaintiff is unable to perform basic household chores, such as vacuuming and cleaning her toilet, because of her physical impairments. (Dkt. Nos. 12-2 at 50; 12-7 at 53).  As the Fourth Circuit has noted, ALJs should not "cherry pick" random facts from the record to support a conclusion without addressing the full record in the case.  *Lewis v. Berryhill*, 858 F. 3d 858, 869 (4th Cir. 2017).

On remand, the evaluation of consistency must include the opinions and findings of other treating and examining physicians and evaluate the full record, rather than isolated facts inconsistent with the balance of the record.

C. Dr. Wanda Starling: Dr. Starling's office records, documenting numerous office visits, examinations, and treatment over a decade or more as a pain management specialist, consistently describe significant right hip and leg pain which required three times a day treatment with Norco, a combination of hydrocodone and acetaminiphen.  (*E.g*. Dkt. No. 12-7 at 26, 28, 57, 138, 140, 142, 145, 153).   These records are consistent with Plaintiff's hearing testimony in which she described her leg and hip pain as "giving me sharp, shooting, stabbing pains that go up and down my leg."  (Dkt. No. 12-2 at 43).  In a summary opinion provided on October 1, 2019, Dr. Starling noted that Plaintiff's pain "worsens with lifting or sitting too long." (*Id*. at 223).  Dr. Starling further opined that due to Plaintiff's chronic hip pain, she "would have problems with attention and concentration sufficient to interrupt tasks more than 15% of the working portion of the workday . . ." (*Id*.).

The ALJ rejected Dr. Starling's opinion regarding time off task on the basis that "it appears heavily reliant on the claimant's subjective reports."  (Dkt. No. 12-2 at 23).  One might

reasonably conclude that after treating Plaintiff for a decade, Dr. Starling would have the ability to make findings and reach conclusions based on clinical observations and medical training and not merely depend on the "subjective reports" of her patient. The ALJ's dismissal of Dr. Starling's opinions on what "appears" to be true is nothing short of rank speculation and is not supported by the record..

The ALJ further dismisses Dr. Starling's opinions because she has used only "conservative treatment" and did not ordered surgery or physical therapy for Plaintiff. (*Id.* at 24). The record reflects that Plaintiff has had a rod lodged permanently in her right femur and hip since 2010, with Plaintiff's most severe pain located where the rod is immediately adjacent to the hip. (Dkt. No. 12-7 at 7, 53). The record is silent concerning whether there is any reasonable surgical treatment to fix this problem or whether physical therapy would be of any benefit. The Fourth Circuit has warned ALJs not to "play doctor" by substituting their medical opinions for those of physicians. *Lewis v. Berryhill*, 858 F.3d at 868. Rejecting Dr. Starling's opinions because her patient did not have surgery or physical therapy is outside the expertise of the ALJ regarding the appropriate treatment for Plaintiff's specific medical conditions.

The ALJ failed to explicitly weigh Dr. Starling's opinions regarding the issues of consistency and supportability. The record reveals that all of Plaintiff's treating physicians share her opinions regarding the claimant's limitations, and Dr. Starling's records reflect years of treatment with potent pain medications based on consistent diagnoses of significant orthopaedic impairments. On remand, the Commissioner should weigh the full record in this matter without trying to second guess the doctor's treatment plan or to assume some better and different treatment modalities are available.

D. Dr. Gordon Early: Plaintiff was sent by the Social Security Administration to Dr. Early for a consultive examination. He had no prior treatment relationship with the Plaintiff and conducted a thorough examination. He documented Plaintiff's chronic pain associated with the permanent insertion of a rod in her right femur, noting that this condition requires her to sit oddly, crossing her "right leg over the left leg and leaning more on the left buttock." (Dkt. No. 12-7 at 54). He explained that this position is necessary because when sits normally "it hurts the right femur proximally." (*Id.*). He also noted Plaintiff rarely drives and is unable to clean toilets because she cannot bend over. (*Id.*).

The ALJ only partially accepted Dr. Early's opinions, contending they are "vague" regarding Plaintiff's specific limitations and does not set forth any exceptional limitations. The ALJ fails to address the consistency of his evaluation with the opinions of the treating physicians, who have noted the same impairments and limitations. Further, Dr. Early's consultive evaluation provides a mechanical explanation for Plaintiff's inability to sit for any duration and the limited nature of her daily activities. On remand, the ALJ is directed to weigh Dr. Early's opinions in accord with the newly adopted regulations for assessing medical opinions.

In contrast with the ALJ's assessment of the opinions of Plaintiff's treating and consultive physicians, he found "generally persuasive" the opinions of the in-house chart reviewers. This includes presumably the finding that Plaintiff can sit six hours in an eight hour day, a critical element for sedentary work. (Dkt. No. 12-3 at 36, 55). The ALJ fails to note this conclusion is inconsistent with the opinions of Plaintiff's treating and examining physicians and Plaintiff's hearing testimony. (Dkt. Nos. 12-2 at 45, 49; 12-7 at 7, 53, 223). The opinions of the chart reviewers provide no substantive basis for their opinion that plaintiff is capable of sitting

six hours in an eight hour day.

The ALJ's cursory assessment in this case of the chart reviewers' opinions, without regard to the regulatory standards for assessment of medical opinions, follows what the Court has observed in the past as a practice of ALJs of imposing exacting standards for the opinions of treating physicians but allowing an almost "anything goes" approach to the opinions the Social Security Administration's in-house physicians who have never laid eyes on the claimant. The new regulatory standards certainly relax the standards for assessment of medical opinions, but they are not a license to uncritically accept the opinions of non-treating and non-examining physicians. Indeed, the priority given to assessing the consistency of opinions "with the evidence from other medical sources" in the new regulations is clearly designed to assure the claimant that the opinions of her treating and examining physicians will be weighed and considered and the opinions of in-house chart reviewers will not be uncritically accepted. § 416.920c(c)(2). The new regulations make much of the fact that no deference will be given to the opinions of any physicians. § 416.920c(a). This plainly includes the opinions of the Social Security Administration's in-house doctors.

## Conclusion

Based on the foregoing, the decision of the Commissioner is **REVERSED** and this matter is **REMANDED** to the agency for further action consistent with this order pursuant to Sentence Four of 42 U.S.C. 405(g).

**AND IT IS SO ORDERED.**

                                                                           <u>S/ Richard Mark Gergel</u>
                                                                           Richard Mark Gergel
                                                                           United States District Judge

Charleston, South Carolina
December 6, 2021